**John FERRANTE, Petitioner,**

v.

**U.S. BUREAU OF PRISONS and
W. Morris, Warden, Fairton,
Respondents.**

**No. CIV. A. 97–4617.**

United States District Court,
D. New Jersey.

Jan. 7, 1998.

---

John Ferrante, Fairton, NJ, pro se.

Faith S. Hochberg, United States Attorney, Louis J. Bizzarri, Assistant United States Attorney, Mitchell H. Cohen U.S.

Courthouse, Camden, NJ, Roberta Truman, Attorney–Advisor, FCI Fairton, Fairton, NJ, for Respondents, U.S. Bureau of Prisons and W. Morris.

## OPINION

ORLOFSKY, District Judge.

This petition for a writ of habeas corpus requires that I review the confusing state of the Supreme Court's retroactivity jurisprudence to evaluate the calculation of a prison sentence pursuant to 18 U.S.C. § 3585(b).[1] Petitioner, John Ferrante, challenges the retroactive application of the Supreme Court's decision in *Reno v. Koray*, 515 U.S. 50, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995), which reversed the Third Circuit and held that a defendant's prison sentence could not be reduced by the duration of his confinement to a community treatment center as a condition of his release on bail. Petitioner's claim requires the resolution of two novel issues, neither of which has been addressed in any reported decision: (1) whether the doctrine announced in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), that criminals cannot benefit on habeas review from a rule of criminal procedure announced after their conviction became final, bars the retroactive application of *Koray* to a petition for a writ of habeas corpus; and (2) whether the Constitution's ex post facto prohibition, as applied to judicial decisions through the Due Process Clause, precludes the retroactive application of *Koray* as an unforeseeable enlargement of a criminal punishment.

Because *Koray* interpreted an existing statute rather than propagated a new rule, and because the application of *Koray* would benefit the government, rather than Petitioner, I conclude that *Teague* does not bar the retroactive application of *Koray*. I also conclude that such an application of *Koray* does not violate constitutional restrictions on ex post facto laws because the pre-existing disagreement among the Circuit Courts of Appeals, and the filing of a petition for a writ of certiorari following a favorable Third Circuit decision, made the Supreme Court's decision

reasonably foreseeable. For these reasons, the petition for a writ of habeas corpus will be denied.

## I. BACKGROUND

The following facts are based upon the affidavits and other documents submitted by the parties and are undisputed unless otherwise noted. *See* 28 U.S.C. §§ 2246, 2247. On October 6, 1994, Petitioner was arrested on charges relating to the distribution of cocaine. *See* Declaration of Roland M. Booher ("Booher Decl.") at ¶ 3. On October 21, 1994, pursuant to the Bail Reform Act of 1984, 18 U.S.C. §§ 3141 *et seq.*, the Honorable M. Faith Angell, United States Magistrate Judge for the Eastern District of Pennsylvania, ordered that Petitioner be detained in federal custody. Booher Decl., Ex. 2 at 1.

On October 28, 1994, however, Magistrate Judge Angell held another hearing on this matter and a new order was entered setting bail for Petitioner at $30,000. Booher Decl., Ex. 3 at 1. The order contained the following conditions for bail:

> Defendant shall reside with his father at [an address in New Jersey]; *Defendant shall cooperate in admission to [the] Discovery drug treatment program in New Jersey;* Defendant shall report to [pretrial services] in Philadelphia once a week by telephone and twice a week in person; Defendant shall not apply for a passport, no[r] own any guns; Defendant's travel is restricted to the District of NJ and the City of Philadelphia.

*Id.* (emphasis added).

Petitioner posted a bond for $30,000 and was released from the custody of the Attorney General. *See* Booher Decl. at ¶ 4. In accordance with the conditions of bail, Petitioner attended the Discovery program, a community treatment center, for 76 days between November 11, 1994, and January 25, 1995. Affidavit of John Ferrante ("Ferrante Aff.") at ¶ 3; *see* Booher Decl., Ex. 4. During that time, Ferrante "was not allowed to leave

---

**1.** That statute provides, in relevant part, that: "A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences...." 18 U.S.C. § 3585(b).

the premises" and was "confined 24 hours per day." Ferrante Aff. at ¶ 3.

Petitioner subsequently pled guilty to two counts of a three count indictment charging him with conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 and distribution of cocaine in or near a school in violation of 21 U.S.C. § 860. Booher Decl., Ex. 5. On June 13, 1996, Petitioner was sentenced to a term of incarceration of 30 months imprisonment and 3 years supervised release. *Id.* Petitioner surrendered to the Bureau of Prisons ("BOP" or the "Bureau") on July 29, 1996, at which time his sentence officially commenced. *See* 18 U.S.C. § 3585(a).

Petitioner alleges that on August 13, 1997, he "made a formal request" to Respondents, the BOP and Warden E.W. Morris of FCI Fairton, to credit his time at the Discovery program against the length of his sentence pursuant to 18 U.S.C. § 3585(b). Ferrante Aff. at ¶ 4. Petitioner claims that his request was denied under the authority of *Koray.* *Id.* Respondents acknowledge that Petitioner made a written request to Roland M. Booher, the Inmate Systems Manager of FCI Fairton, and that Booher denied that request. Booher Decl. at ¶ 9. According to Booher, Petitioner made no other requests to Respondents while incarcerated at FCI Fairton. *Id.*

On September 16, 1997, Petitioner filed a Petition for a Writ of Habeas Corpus by a Person in Federal Custody seeking to reduce the length of his imprisonment by the duration of his confinement at the Discovery program. Petitioner has also requested an expedited decision in this matter because he is scheduled for release to a halfway house on April 12, 1998.

## II. DISCUSSION

Petitioner does not dispute the validity or legality of his sentence; instead, Petitioner claims that the BOP erroneously calculated the duration of his sentence under § 3585(b). Therefore, I shall treat Petitioner's request as a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. *See Chambers v. Holland,* 920 F.Supp. 618, 620 (M.D.Pa.) (treating habeas corpus petition as filed pursuant to 28 U.S.C. § 2241, rather than 28

U.S.C. § 2255, where "Petitioner's disagreement lies not with the sentence imposed by [the judge], but with the BOP's computation of that sentence [under § 3585]"), *aff'd,* 100 F.3d 946 (3d Cir.1996); *Soyka v. Alldredge,* 481 F.2d 303, 306 (3d Cir.1973); *Gomori v. Arnold,* 533 F.2d 871, 874 (3d Cir.1976); *United States v. Weathersby,* 958 F.2d 65, 66 (5th Cir.1992) (where defendant requests credit for time free on bond, "Section 2255 is not the appropriate vehicle for such a motion; he should have invoked 28 U.S.C. § 2241.").

### A. Exhaustion of Administrative Remedies

Respondents contend that Petitioner is barred from asserting his claim because Petitioner's written request to the Inmate Systems Manager does not satisfy the procedures required for an administrative remedy. *See* Answer at 2–3 (citing 28 C.F.R. §§ 542.10–.19). Petitioner alleges that he attempted to file the appropriate form, but that the prison official refused to sign it and instead persuaded Petitioner that "administrative review was futile or fruitless." Petitioner's Reply at ¶ j; *see id.* at Attachment 1.

I need not resolve this dispute, however, for two reasons. First, if Petitioner's claim is meritorious, he could be eligible for release to a halfway house sometime in February. Dismissing this petition now to allow Petitioner to file an appropriate grievance with the Bureau would thus be futile. *See Snisky v. Pugh,* 974 F.Supp. 817, 819–20 (M.D.Pa. 1997) (finding that it would be futile to require petitioner to exhaust administrative remedies where scheduled release date loomed near).

Second, I need not reach the exhaustion issue because, for the reasons set forth below, I find that Petitioner's claim is precluded by the Supreme Court's decision in *Koray.* *See United States v. Igbonwa,* 120 F.3d 437, 440 & n. 2 (3d Cir.1997) (declining to reach government's assertion that § 2255 petitioner had failed to exhaust his administrative remedies because "court need not reach difficult questions of jurisdiction when the case can be resolved on some other grounds in favor of the same party") (quoting *Geor-*

*gine v. Amchem Products, Inc.,* 83 F.3d 610, 623 (3d Cir.1996), *aff'd,* —— U.S. ——, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)), *petition for cert. filed,* —— U.S.L.W. —— (U.S. Oct. 23, 1997).

### B. Confinement in Community Treatment Center as "Official Detention"

■ Congress has provided that, when calculating a term of imprisonment, "[a] defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences...." 18 U.S.C. § 3585(b). Petitioner contends that his confinement at the Discovery program constituted "official detention" within the meaning of § 3585(b), and that he is thus entitled to credit for his "time served."

In *Reno v. Koray,* 515 U.S. 50, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995), however, the Supreme Court held that confinement to a community treatment center as a condition of release on bail does not satisfy the "official detention" requirement of § 3585(b). The Court found that the phrase "official detention" was defined in reference to the Bail Reform Act of 1984 which afforded a federal court only two options at a pre-trial detention hearing: (1) to "release" the defendant on bail, possibly subject to a variety of conditions; or (2) to order the defendant "detained." *Id.* 115 S.Ct. at 2025 (interpreting 18 U.S.C. § 3142). Based on this dichotomy, the Court concluded that "a defendant suffers 'detention' only when committed to the custody of the Attorney General; a defendant admitted to bail on restrictive conditions, like [Koray] was, is 'released.'" *Id.*

The Court acknowledged that outright detention and restrictive conditions of release could appear similar in practice, but explained that, for purposes of § 3585(b), the distinction turned on whether the defendant was "completely subject to BOP's control" or whether judicial action was required to reassign him to a different place of confinement. *Id.* 115 S.Ct. at 2028. Noting that Koray's confinement was subject to the court's and not the Bureau's control, the Court concluded that "the time [Koray] spent at [the] community treatment center while released on bail

pursuant to the Bail Reform Act of 1984 was not 'official detention' within the meaning of 18 U.S.C. § 3585(b). [Koray] therefore was not entitled to a credit against his sentence of imprisonment." *Id.* 115 S.Ct. at 2029. *Koray,* 515 U.S. 50, 115 S.Ct. 2021, 132 L.Ed.2d 46.

In this case, Magistrate Judge Angell reversed her initial detention order and set bail for Petitioner's release. *See* Booher Decl., Ex. 3. As a condition of bail, Petitioner was required to subject himself to confinement at the Discovery program. *Id.* Despite his confinement, Petitioner was "released" by Magistrate Judge Angell and could not have been transferred by the Bureau without a judicial order. This case is indistinguishable from the circumstances of *Koray,* and I am thus bound by the Supreme Court's decision in that case. Therefore, I conclude that Petitioner's confinement at the Discovery program does not constitute "official detention" under § 3585(b).

Petitioner nevertheless contends that the specific conditions of his confinement constituted "jail like custodial incarceration." Petitioner's Reply at 5. Petitioner relies on several decisions which predate *Koray. See, e.g., Mills v. Taylor,* 967 F.2d 1397 (9th Cir.1992); *Brown v. Rison,* 895 F.2d 533 (9th Cir.1990) (interpreting 18 U.S.C. § 3568 which was repealed in 1984). The Supreme Court, however, overruled the holding of these cases in *Koray. See Koray,* 115 S.Ct. at 2024 & n. 1 (settling conflict among circuits by overruling, e.g., the Ninth Circuit's decision in *Mills*).

Although he avoids any citation to the case, Petitioner's language and reasoning also implicitly rely on the Third Circuit's decision in *Koray v. Sizer,* 21 F.3d 558 (3d Cir.1994), *rev'd sub nom. Reno v. Koray,* 515 U.S. 50, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995). In that case, the Third Circuit found that confinement in a community treatment center constituted "official detention" under § 3585 where the facts of the case evidenced "jail-type detention." *Id.* at 567. Unfortunately for Petitioner, however, that decision was reversed by the Supreme Court. In fact, the Supreme Court rejected precisely the "fact-intensive inquiry into the circum-

stances of confinement" urged by Petitioner and instead adopted the bright-line distinction between release and detention orders under § 3142. *Koray*, 115 S.Ct. at 2028–29. Thus, Petitioner's confinement at the Discovery program as a condition of his release on bail does not satisfy § 3585(b)'s "official detention" requirement under *Koray*.

### C. The Ex Post Facto Clause and *Reno v. Koray*

 Petitioner contends that the retroactive application of the Supreme Court's 1995 decision in *Koray*, would violate the Ex Post Facto Clause of the Constitution. *See* Petitioner's Reply at 6. The Ex Post Facto Clause itself "does not apply to judicial constructions of statutes." *United States v. Lewis*, 862 F.Supp. 1277, 1285 (D.N.J.1994); *see Marks v. United States*, 430 U.S. 188, 191, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) ("The Ex Post Facto Clause is a limitation upon the powers of the Legislature and does not of its own force apply to the Judicial Branch of government.") (citation omitted). Nevertheless, "an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *ex post facto* law" and thereby violates the Due Process Clause. *Bouie v. City of Columbia*, 378 U.S. 347, 353, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964); *see Marks*, 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260; *Helton v. Fauver*, 930 F.2d 1040, 1044–45 (3d Cir.1991) (although *Bouie* and *Marks* involved substantive criminal statutes, that "principle applies equally to after-the-fact increases in the degree of punishment").

#### 1. Retroactivity of *Reno v. Koray*

 As an initial matter, I must determine whether the retroactive application of *Koray* is proper in the context of a petition for post-conviction collateral relief. *See United States v. Brady*, 88 F.3d 225, 228 (3d Cir. 1996) (finding an ex post facto violation requires that "[f]irst, the law 'must be retrospective, that is, it must apply to events occurring before its enactment'") (quoting *Weaver v. Graham*, 450 U.S. 24, 29, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981)), *cert. denied*, ——

U.S. ——, 117 S.Ct. 773, 136 L.Ed.2d 718 (1997).

Although this issue has not been addressed in any reported decision, the Ninth Circuit noted in an unpublished opinion that *Koray* may be applied retroactively. *United States v. Magee*, 86 F.3d 1164 (9th Cir.1996) (table, text at 1996 WL 285558, *2 n. 3) (citing *Tanner v. Sivley*, 76 F.3d 302 (9th Cir.1996)). In *Tanner*, the Ninth Circuit applied *Koray* retroactively without any discussion of that issue. *Tanner*, 76 F.3d 302. The Eleventh Circuit has also applied *Koray* retroactively without comment. *See Rodriguez v. Lamer*, 60 F.3d 745 (11th Cir.1995).

 The doctrine of retroactivity was revamped by a plurality of the Supreme Court in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and the *Teague* analysis was subsequently endorsed by a majority of the Court in *Penry v. Lynaugh*, 492 U.S. 302, 313–14, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). "Under *Teague*, a habeas petitioner generally cannot benefit from a new rule of criminal procedure announced after his conviction has become final on direct appeal." *Wright v. West*, 505 U.S. 277, 291, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992). I conclude, however, that the *Teague* doctrine does not bar the retroactive application of *Koray* in this instance for at least two independently sufficient reasons: (1) *Koray* merely interpreted an existing statute rather than announcing a new rule of law; and (2) retroactive application of the *Koray* decision would benefit Respondents rather than Petitioner.

 A judicial interpretation of an existing statute does not constitute a new rule under *Teague*. "The principle that statutes operate only prospectively, while judicial decisions operate retrospectively, is familiar to every law student." *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 114 S.Ct. 1510, 1519, 128 L.Ed.2d 274 (1994). Thus, "[a] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction." *Id.* Applying this principle in the context of post-conviction collateral relief, one court has explained that "a court's interpretation of a

statute is never new law in the *Teague* sense, because the decision 'declares what the statute meant from the day of its enactment, not from the date of the decision.'" *United States v. Navarro,* 972 F.Supp. 1296, 1301 n. 6 (E.D.Cal.1997) (quoting *United States v. McKie,* 73 F.3d 1149, 1151 (D.C.Cir.1996)).

In *Koray,* the Supreme Court interpreted the phrase "official detention" as it appears in 18 U.S.C. § 3585(b). The Supreme Court's decision in *Koray* therefore illuminated what § 3585(b) had always meant and, as an interpretation of § 3585(b), *Koray* may be applied retroactively to this case.

This conclusion is also compelled by the fact that the *Koray* decision helps Respondents' position rather than Petitioner's. In *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), the Supreme Court determined that *Teague*'s prohibition against retroactivity applies only to rules which favor defendants. The Court found that, because a habeas petitioner has no interest in the judgment of conviction and has no claim of reliance on past judicial precedent as a basis for action, "the State will benefit from our *Teague* decision in some federal habeas cases, while the habeas petitioner will not." *Id.* 506 U.S. at 373. The Court concluded that this is "a perfectly logical limitation of *Teague* to the circumstances which gave rise to it." *Id.*

Although arguably dicta in *Fretwell,* the Court has since applied this principle in finding that a judicial decision was retroactive where "it did not work a change in the law favoring criminal defendants." *Gilmore v. Taylor,* 508 U.S. 333, 113 S.Ct. 2112, 2117, 124 L.Ed.2d 306 (1993). Moreover, the Third Circuit has adhered to this principle. *See Flamer v. Delaware,* 68 F.3d 710, 725 n. 14 (3d Cir.1995) ("*Teague* only applies to a change in the law that favors criminal defendants") (citing *Gilmore* ), *cert. denied,* 516 U.S. 1088, 116 S.Ct. 807, 133 L.Ed.2d 754 (1996); *see Wedra v. Lefevre,* 988 F.2d 334, 341–42 (2d Cir.1993) ("*Lockhart* forecloses [petitioner's] argument that if a petitioner cannot retroactively apply a new rule to his benefit then due process requires that the state should not have the benefit of using the new rule to the petitioner's detriment.").

For these reasons, the *Teague* doctrine does not bar the retroactive application of *Koray* to this case.

## 2. Reasonable Foreseeability of *Koray*

 Retroactive application of a judicial decision does not violate the ex post facto prohibition of the Constitution where the reasonable foreseeability of the decision put the defendant on notice of its consequences. *See Bouie,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894; *Helton,* 930 F.2d 1040. I conclude that the split of authority preceding the Supreme Court's decision in *Koray,* as well as the pending petition for a writ of certiorari in *Koray,* render that decision reasonably foreseeable. Therefore, I find that the retroactive application of *Koray* does not conflict with constitutional ex post facto concerns.

Petitioner relies on the state of the law prior to the Supreme Court's decision in *Koray* as interpreted by the Ninth Circuit in *Brown v. Rison,* 895 F.2d 533 (9th Cir.1990). *Brown* held that a defendant's sentence should be reduced by the length of his confinement to a community treatment center as a condition of bail. Although *Brown* interpreted 18 U.S.C. § 3568 which was repealed in 1984 and replaced with § 3585(b), the Ninth Circuit subsequently reiterated the *Brown* rule under the modern statute. *See Mills v. Taylor,* 967 F.2d 1397 (9th Cir.1992).

A majority of the circuits, however, had reached the opposite conclusion. *See Moreland v. United States,* 968 F.2d 655, 657–60 (8th Cir.) (en banc), *cert. denied,* 506 U.S. 1028, 113 S.Ct. 675, 121 L.Ed.2d 598 (1992); *United States v. Woods,* 888 F.2d 653, 655–56 (10th Cir.1989), *cert. denied,* 494 U.S. 1006, 110 S.Ct. 1301, 108 L.Ed.2d 478 (1990); *Dawson v. Scott,* 50 F.3d 884, 888–91 (11th Cir. 1995); *see also United States v. Zackular,* 945 F.2d 423, 425 (1st Cir.1991) (time spent in home confinement prior to sentencing); *United States v. Edwards,* 960 F.2d 278, 282–83 (2d Cir.1992) (time spent in home confinement under electronic monitoring while released on bond); *United States v. Insley,* 927 F.2d 185, 186 (4th Cir.1991) (time spent in home confinement as condition of bond pending appeal); *Pinedo v. United States,* 955 F.2d 12, 14 (5th Cir.1992) (per curiam) (time spent on pre-trial bail); *United States v.*

*Becak,* 954 F.2d 386, 387–88 (6th Cir.) (time spent at mother's house as condition of release on bond), *cert. denied,* 504 U.S. 945, 112 S.Ct. 2286, 119 L.Ed.2d 211 (1992).

In *United States v. Rodgers,* 466 U.S. 475, 104 S.Ct. 1942, 80 L.Ed.2d 492 (1984), the Supreme Court applied its interpretation of a criminal statute retroactively, despite the defendant's alleged reliance on prior circuit precedent, because "the existence of conflicting cases from other Courts of Appeals made review of that issue by this Court and decision against the position of the respondent reasonably foreseeable." *Id.* 466 U.S. at 484; *see Moskal v. United States,* 498 U.S. 103, 114 n. 6, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990) (defendant's "contention that he was 'entitled to rely' on one Court of Appeals decision ... is wholly unpersuasive"). Thus, "[u]nder *Rodgers,* the mere existence of conflicting decisions reached by other courts of appeals makes it 'reasonably foreseeable' that the Supreme Court will resolve the circuit split and decide the issue adversely to the defendant." *United States v. Russotti,* 780 F.Supp. 128, 135 (S.D.N.Y.1991).

In *United States v. Zuniga,* 18 F.3d 1254, 1259 (5th Cir.), *cert. denied,* 513 U.S. 880, 115 S.Ct. 214, 130 L.Ed.2d 142 (1994), the court retroactively applied a Supreme Court decision to the defendant despite the defendant's ex post facto arguments. Prior to the Supreme Court's decision, the Eleventh Circuit and the District of Columbia Circuit had disagreed with a Ninth Circuit ruling on the relevant issue. Citing *Rodgers,* the *Zuniga* court concluded that "[w]here a split exists among the circuits, it is reasonably foreseeable that the Supreme Court may resolve that conflict adversely to the defendant." *Zuniga,* 18 F.3d at 1259. For the same reasons, the disagreement among the Circuit Courts of Appeals regarding the pending issue renders the *Koray* decision reasonably foreseeable.

The fact that the Third Circuit had decided *Koray v. Sizer* in Petitioner's favor prior to his release on bail does not change this result. In *United States v. Walsh,* 770 F.2d 1490, 1492–93 (9th Cir.1985), Walsh claimed to have relied upon a Ninth Circuit decision predating his conduct which was subsequent-

ly reversed by the Supreme Court. *See United States v. Albertini,* 710 F.2d 1410 (9th Cir.1983), *rev'd,* 472 U.S. 675, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985). In *Walsh,* however, the Ninth Circuit held that "[t]he difficulty with Walsh's position is that he could not properly rely on our decision in *Albertini,* since that decision never became settled circuit law. To the contrary, it was reversed by the Supreme Court." *Walsh,* 770 F.2d at 1492; *see United States v. Angiulo,* 847 F.2d 956, 966 (1st Cir.) (finding that defendant's reliance on circuit precedent did not create an ex post facto violation because "the Supreme Court's reversal of that decision was reasonably foreseeable") (citing *Rodgers,* 466 U.S. at 484), *cert. denied,* 488 U.S. 852, 109 S.Ct. 138, 102 L.Ed.2d 110, *and cert. denied,* 488 U.S. 928, 109 S.Ct. 314, 102 L.Ed.2d 332 (1988). Thus, Petitioner could not have relied on *Koray v. Sizer.*

Moreover, in *Koray v. Sizer* the petition to the Supreme Court for a writ of certiorari had already been filed when Petitioner posted bail. The Third Circuit issued its ruling on April 25, 1994. *Koray v. Sizer,* 21 F.3d 558. Although the writ of certiorari was not granted until January 13, 1995, *Reno v. Koray,* 513 U.S. 1106, 115 S.Ct. 787, 130 L.Ed.2d 779 (1995), the petition must have been filed by the end of July, 1994. *See* Sup.Ct. R. 13.1 (petition must be filed within 90 days of Court of Appeals' judgment); Sup. Ct. R. 13.2 (late-filed petition is "jurisdictionally out of time"). Thus, by the time of Petitioner's arrest in October of that year, a petition for a writ of certiorari must have been filed with the Supreme Court on this issue which had split the Circuit Courts of Appeals. *Cf. Russotti,* 780 F.Supp. at 134 (finding that Supreme Court's grant of a writ of certiorari prior to relevant conduct made the Court's subsequent ruling "especially" reasonably foreseeable). For these reasons, the Supreme Court's decision in *Koray* was reasonably foreseeable, and its retroactive application to Petitioner accordingly does not violate the ex post facto prohibition of the Constitution.

## III. CONCLUSION

For the reasons set forth above, the petition for a writ of habeas corpus will be

denied. The Court will enter an appropriate Order.[2]

---

**2.** I need not decide whether to issue a certificate of appealability pursuant to 28 U.S.C. § 2253 in this case. *See Bradshaw v. Story,* 86 F.3d 164, 166 (10th Cir.1996) ("no certificate of appealability is required here because the instant appeal is from a final order denying a § 2241 petition, which is neither a 'final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court' nor a 'final order in a proceeding under section 2255'") (quoting 28 U.S.C. § 2253); *Ojo v. Immigration & Naturalization Service,* 106 F.3d 680, 681 (5th Cir.1997) (plain language of § 2253 indicates that certificate of appealability is not required for appeal from denial of § 2241 petition); *Forde v. U.S. Parole Commission,* 114 F.3d 878, (9th Cir.1997) (citing *Bradshaw* and *Ojo* ).